**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STEIN & NIEPORENT LLP**
David Stein (DS 2119)
1441 Broadway, Suite 6090
New York, New York 10018
(212) 308-3444

Attorneys for Defendant

| | |
|---|---|
| Kevin Yan Luis, on behalf of himself and all others similarly situated, | |
| Plaintiffs, | DOCKET NO. 22-cv-2526 (LJL) (VF) |
| - vs. – | |
| Glvss, Inc., | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS THE COMPLAINT**

**<u>TABLE OF CONTENTS</u>**

Page

PRELIMINARY STATEMENT................................................................................................ 1

STATEMENT OF FACTS..................................................................................................... 1

LEGAL ARGUMENT ......................................................................................................... 2

    I.      Plaintiff lacks standing to bring his claims because he has failed to plead an injury in fact.................................................................................................................. 2

    II.     The complaint should be dismissed because Glvss, Inc.'s purported website is not a place of public accommodation under the ADA .................................... 6

    III.    Plaintiff's city claims must be dismissed for the same reasons his ADA claims must be.................................................................................................................. 14

    IV.    Plaintiff is not entitled to a recovery of "civil penalties and fines" or punitive damages under the NYCHRL................................................................................. 15

CONCLUSION ................................................................................................................. 16

TABLE OF AUTHORITIES

Cases                                                                                                    Pages

*Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)................................. 4, 6

*Bernstein v. City of New York*, 621 F. App'x 56 (2nd Cir. 2015) ................................................ 4

*Calcano v. Swarovski North America Limited*, 2022 WL 1788305 (2nd Cir. 2022)................. 4, 5

*Camarillo v. Carrols Corp.*, 518 F.3d 153 (2nd Cir. 2008)............................................................ 3

*Chauca v. Abraham*, 30 N.Y.3d 325, 89 N.E.3d 475 (2017)....................................................15

*Cooper v. New York State Dep't of Lab.*, 819 F.3d 678 (2nd Cir. 2016) ..............................14

*CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) ............................13

*Dominguez v. Athleta LLC*, 2021 WL 918314 (S.D.N.Y. Mar. 10, 2021) ............................... 4

*Dominguez v. Grand Lux Cafe LLC*, 2020 WL 3440788 (S.D.N.Y. June 22, 2020). ...................3-4

*Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977 (S.D.N.Y. July 6, 2020) ........................ 3

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998),................................................10

*Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC) Inc.*,
        528 U.S. 167 (2000)........................................................................................................ 2

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.)
        *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). ....................................................................12

*Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154 (2nd Cir. 2013) ................................. 3

*Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2nd Cir. 2022) ........................................................ 3

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017)..........13-14

*Home Ins. Co. v. American Home Prods. Corp.*,
        75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))............................................15-16

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2nd Cir. 2006) ................................15

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184 (2nd Cir. 2013) ......................................... 3

*Krist v. Kolombos Rest. Inc.,* 688 F.3d 89 (2nd Cir. 2012) ......................................................... 6

*Lujan v. Defenders of Wildlife*, 50 U.S. 555 (1992). ................................................................. 2

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) ....................................11

*Martinez v. MyLife.com, Inc.*, 2021 WL 5052745 (E.D.N.Y. Nov. 1, 2021) ....................................... 10

*Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2nd Cir. 2016) ........................................................... 3

*Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022), ................................ 12

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999),
    *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000) ...................................... 9

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2nd Cir. 2000) ........................................ 14

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) ............................................ 11

*Range v. 535 Broadway Grp. LLC*, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019) ........................... 14

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) ............................................. 12

*Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). ......................... 12-13

*Small v. Gen. Nutrition Companies, Inc.,* 388 F. Supp. 2d 83 (E.D.N.Y. 2005). ............................. 3

*Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 194 L. Ed. 2d 635 (2016) .......................................... 2

*Suris v. Gannett Co.*, 2021 WL 2953218 (E.D.N.Y. July 14, 2021) .......................................... 10

*United States v. Tohono O'Odham Nation*
    563 U.S. 307, 131 S. Ct. 1723, 179 L.Ed.2d 723 (2011). .......................................... 10

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) ........................... 12

*Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) ............................... 8-10

<u>Statues and Rules</u>

42 U.S.C. § 12181(7) ........................................................................................ 7, 9, 11

28 U.S.C. § 1367(c) ........................................................................................... 14-15

28 CFR Appendix C to Part 36 ................................................................................ 7-8

Fed. R. Civ. P. 12 ............................................................................................ 1, 16

N.Y. Exec. L. § 297(4)(c)(vi) ................................................................................... 15

NYC Admin Code. Title 8, Ch. 1, § 8-127(a) ................................................................. 15

**PRELIMINARY STATEMENT**

Plaintiff Kevin Yan Luis asserts that the purported website of defendant Glvss, Inc., www.shopzerouv.com, is not equally accessible to blind and visually-impaired consumers in violation of the Americans with Disabilities Act ("ADA"), and seeks injunctive relief under that statute.

But plaintiff's complaint does not satisfy the requirement to plead an injury in fact, resulting in a lack of standing for his case, requiring that this case be dismissed pursuant to Fed. R. Civ. P. 12(b)(1). More importantly, because Glvss, Inc.. does not have a public-facing physical location as part of its business, it is not a place of public accommodation under the Americans with Disabilities Act, and therefore even if plaintiff had standing, the complaint fails to state a claim for relief.

**STATEMENT OF FACTS**

Defendant Glvss, Inc. is a California corporation; plaintiff alleges that it sells sunglasses from a website it operates at www.shopzerouv.com.[1]  Plaintiff alleges that he is a resident of Brooklyn who is a visually impaired and legally blind individual with a qualifying disability under the Americans with Disabilities Act. He alleges that he uses specialized screen reading software such as Job Access With Speech ("JAWS") to enable him to access information on the Internet.

Plaintiff initially claimed that in March 2022 (as well as, perhaps, unspecified "numerous times") he tried to access the website located at shopzerouv.com in order to make an online purchase of sunglasses. However, when he did so, he allegedly encountered

---

[1] Defendant denies that it owns or operates the www.shopzerouv.com website; however, because that is a factual dispute it is beyond the scope of a motion to dismiss.  For the purposes of this motion, the court will be required to accept that this allegation is true.

a handful of vaguely described virtual barriers that purportedly prevented him from being able to complete this purchase.

**LEGAL ARGUMENT**

**I.     Plaintiff lacks standing to bring his claims because he has failed to plead an injury in fact.**

This Court should dismiss Mr. Yan Luis's claims because he has not met his burden of showing that he has suffered the "injury in fact" required by Article III of the United States constitution. Here, Plaintiff bears the burden of establishing the elements of standing because he has invoked federal jurisdiction by bringing a claim under the ADA. *Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016).

In order to establish Article III standing, a plaintiff must sufficiently plead: "(l) [he] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc., v. Laidlaw Environmental Services (TOC) Inc.*, 528 U.S. 167 , 180-81 (2000). "A harm is "particularized" if it "affect[s] the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 50 U.S. 555, 560 n.l (1992). An injury is ''concrete" if it is "de facto"; that is, it must actually exist rather than being only "abstract." *Spokeo*, 36 S.Ct. at 1548. In *Spokeo*, the plaintiff brought a claim alleging a technical violation of the Fair Credit Reporting Act, but asserted no injury beyond that violation. The Supreme Court held that a party does not "automatically satisfy the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id*. at 1549.

Mr. Yan Luis fails to plead an injury-in-fact under the ADA because his complaint fails to adequately plead the third factor: redressability. Because the only remedy under the ADA is injunctive relief, a plaintiff has standing only when he establishes, inter alia, that "it was reasonable to infer, based on the past frequency of plaintiff's visits and the proximity of defendants' [services] to plaintiff's home, that plaintiff **intended to return** to the subject location." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187–88 (2nd Cir. 2013)(*citing Camarillo v. Carrols Corp.*, 518 F.3d 153, 158 (*per curiam*)(emphasis added). That is because without the "real or immediate threat of injury," injunctive relief is not available. *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2nd Cir. 2016)

The plaintiff must allege specific facts that "show a plausible intention or desire to return to the place but for the barriers to access." *Small v. Gen. Nutrition Companies, Inc.,* 388 F. Supp. 2d 83, 86 (E.D.N.Y. 2005). As noted above, the Second Circuit has laid out several factors to consider. In the context of a website, "proximity" is not a meaningful concept, but plaintiff cannot simply assert vague claims that "in the future" the plaintiff intends to use the website to complete a transaction. *Harty v. W. Point Realty, Inc.*, 28 F.4th 435 (2nd Cir. 2022)("'[S]ome day' intentions – without any description of concrete plans, or indeed even any specification of when the some day will be – do not support a finding of the 'actual or imminent' injury" that Article III requires."); *Dominguez v. Pizza Hut of Am., LLC*, 2020 WL 3639977, at *2 (S.D.N.Y. July 6, 2020)(assertion of intent to return when alleged barriers have been rectified is insufficient.) Rather, to establish this factor, "[t]he plaintiff must allege specific facts that 'show a plausible intention or desire to return to the place but for the barriers to access.'" *Dominguez v. Grand Lux Cafe LLC*, 2020 WL 3440788, at *3 (S.D.N.Y. June 22, 2020). See, e.g., *Harty v. Greenwich Hosp. Grp., LLC*, 536 F. App'x 154, 155 (2nd Cir. 2013)

(pleading that one travels frequently does not show intent to return to a specific hotel); *Bernstein v. City of New York*, 621 F. App'x 56, 58–59 (2nd Cir. 2015)(alleging that one has visited Central Park many times in the past is not sufficient to show intent to return in the future); *Dominguez v. Athleta LLC*, 2021 WL 918314, at *3 (S.D.N.Y. Mar. 10, 2021)("indefinite" plan to return to store is conclusory; furthermore, fact of filing "at least 24 nearly identical complaints against other retailers… undermines the sincerity of Plaintiff's alleged intent to return").

Moreover, just this month, the Second Circuit addressed the very question of the required pleading standards (albeit in the context of gift cards). It explained that merely parroting the Second Circuit's language from *Kreisler*—proximity, being a past customer, intent to return—is really "nothing more than 'legal conclusion[s] couched as … factual allegation[s].'" *Calcano v. Swarovski North America Limited*, 2022 WL 1788305 at *4 (2nd Cir. 2022). The Second Circuit *rejected* the idea that a court is required to accept vague assertions, and pointed out that to "nudge [plaintiffs'] claims 'across the line from conceivable to plausible,'" *Id.* at *5 (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 680 (2009)) they needed to, e.g., provide details of past visits or the frequency of such visits (rather than just saying "on prior occasions"), explain what items they purchased in the past, why they want to purchase particular goods now, and why they would do so "immediately" when those goods became accessible. *Calcano*, 2022 WL 1788305 at *5. Plaintiff herein provides none of that sort of specificity, *or any other relevant facts*.

Here, Mr. Yan Luis does not satisfy this test. He does not, for instance, plead a specific date to return beyond "in the future" — the same generic formulation routinely rejected by the courts in ADA cases. He does not specifically plead past visits to the site other than the

4

one on March 22, 2022, just before this lawsuit was filed. He does not plead that he has ever bought sunglasses online before — let alone the frequency with which he has done so — which would make it more plausible that he would buy such goods in this instance. He does not identify any *specific* product he intends to buy, beyond "sunglasses."[2]  Nor does plaintiff plead why he wants to buy such a product *from defendant* — especially given that he pleads that the access barriers on the site prevented him from so much as "determin[ing] what is on the website"  in the first place! — and why he would wait to purchase it at some unspecified time in the future rather than doing so in the present from any other retailer. (Precisely *because* proximity is not a factor on the Internet, there would be little reason for an individual to buy a generic product like sunglasses only from one specific website, in contrast to an individual favoring a particular brick and mortar business because it was close to the individual's home or work.) (Defendant does not contend that each of these facts is required, or that other facts would not be relevant; this is merely an illustrative list.)  The need for specificity is particularly acute in the case of a serial plaintiff who simply files scores of nearly identical lawsuits, exploiting the ease of facilely claiming that one intends to visit a website.[3]  In *Calcano*, the Second Circuit explained, "Third, we cannot ignore the broader

---

[2] Oddly, he claims that he wants to make "additional" purchases of sunglasses, despite the fact that he also pleaded that he was "unable to complete a purchase of sunglasses."

[3] A search of PACER — of which the Court can take judicial notice — reveals that plaintiff has filed 38 cases of this nature in this district in just the last four months. And all are equally vague. *See, e.g., Yan Luis v. Tristar Products, Inc,* 22-cv-2454 ("Moreover, Plaintiff intends on visiting the Website in the future in order to make additional purchases"); *Yan Luis v. Carhartt, Inc.,* 22-cv-1646 ("Moreover, Plaintiff intends on visiting the Website in the future in order to make additional purchases"); *Yan Luis v. Nest Fragrances, LLC*, 22-cv-4730 ("Moreover, Plaintiff intends on visiting the Website in the future in order to make additional purchases"); *Yan Luis v. Big Wall Décor, LLC,* 22-cv-2936 ("Moreover, Plaintiff intends on visiting the Website in the future in order to make additional purchases"); etc.

context of Plaintiffs' transparent cut-and-paste and fill-in-the-blank pleadings. The four Plaintiffs before us filed eighty-one of over 200 essentially carbon-copy complaints between October and December 2019. All of the complaints use identical language to state the same conclusory allegations." *Calcano*, 2022 WL 1788305 at *5. In saying that, the Second Circuit did of course not rule that being a serial plaintiff automatically invalidates cases of this nature; it merely noted that "[t]his backdrop of Plaintiffs' Mad-Libs-style complaints further confirms the implausibility of their claims of injury." *Id.* at *6.

Nothing in the amended complaint proves that plaintiff would *not* return to defendant's website in the future. But the burden is on the plaintiff to affirmatively establish that it is plausible that he would. The mere conclusory statements offered by plaintiff do not push he complaint across the line from possible to plausible. They are just generic statements which parrot the legal standard without supplying any meaningful information, and should not entitle plaintiff to unlock the doors of discovery. *Iqbal*, 556 U.S. at 678.

## II.     The complaint should be dismissed because Glvss, Inc.'s purported website is not a place of public accommodation under the ADA.

The Americans with Disabilities Act is undeniably a broad statute, but it nevertheless has its limits; Title III — the relevant portion of the statute — applies only to a "place of public accommodation." Because Glvss, Inc. does not operate a place of public accommodation — its only business, according to the complaint, is the website www.shopzerouv.com — plaintiff has failed to state a claim with respect to Glvss, Inc.. Plainly speaking, www.shopzerouv.com is not a place of public accommodation.

To state a claim under Title III, the plaintiff must establish "(1) that he or he is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against the plaintiff

within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 95 (2nd Cir. 2012)

Plaintiff has alleged the first and third elements, but fails to sufficiently allege the second,

that Glvss, Inc. is a "place of public accommodation" – an indispensable element of his cause

of action - in order to plead a Title III discrimination claim.

The only allegations in the complaint that defendant's business is such a place are the

conclusory assertions in Paragraphs 19 and 59 that defendant's website is a "public

accommodation within the definition of" Title III of the ADA, 42 U.S.C. § 12181(7).  However,

plaintiff has pleaded no facts to explain *how* defendant's website fits within that statutory

section, which provides a detailed list of the types of entities that are considered "public

accommodations" for purposes of Title III:

> (A) an inn, hotel, motel, or other place of lodging . . .
> (B) a restaurant, bar, or other establishment serving food or drink;
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> (G) a terminal, depot, or other station used for specified public transportation;
> (H) a museum, library, gallery, or other place of public display or collection;
> (I) a park, zoo, amusement park, or other place of recreation;
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). The regulations promulgated by the Department of Justice echo that

list, and then emphasize that this list is not merely a list of exemplars, but a *complete* list: "In

order to be a place of public accommodation, a facility . . . **must** fall within one of these 12 categories." 28 CFR Appendix C to Part 36 (Emphasis added.) This list explicitly includes only physical places, open to the public; websites, unconnected to any physical place of business, are conspicuous only by their absence. Since, as noted above, defendant does not have a public-facing physical place of business, it is not included in the above statutory definition and is exempt from Title III coverage.

To be sure, the Second Circuit has never spoken to the issue raised here — whether a website with no nexus to any public-facing physical location is a place of public accommodation — and there is a split of authority, both nationwide and within the district courts in this circuit, as to that issue. But defendant submits that Judge Komitee's careful decision in *Winegard v. Newsday LLC*, 2021 WL 3617522 (E.D.N.Y. Aug. 16, 2021) is most compelling. After first noting that the phrase "place of public accommodation" has been used for decades to refer to physical places rather than all types of businesses, Judge Komitee examined — as have the Circuit Courts ruling against plaintiff's interpretation of the law — the specific language of the ADA. He pointed out that the statute was very specific, listing 50 specific examples of the types of businesses covered, and that at least forty nine of them "indisputably relate to physical places." *Id*. at *3. (The fiftieth, which some courts said referred to a non-physical place, was a "travel service," but as Judge Komitee noted, there is no reason to assume that this does not refer to a physical travel agency also. *Id*. at n.1) Judge Komitee also noted that Congress made specific word choices going out of its way to indicate that it was considering only physical locations — for example, "the office of an accountant or lawyer" rather than "accounting firm or law firm," and "office of a health care provider" rather than "health care practice." He further noted that the statute expressly uses the phrase

"place of" public accommodation, rather than just "public accommodation," and the term "place" is generally understood to mean a physical place.

Judge Komitee then examined *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000), the Second Circuit's decision upon which so much of this Circuit's caselaw in this area of the law rests. *Pallozzi* did not have anything to do with websites, but it held that since Title III expressly applies to "insurance offices," 42 U.S.C. § 12181(7)(F), it also applies to the insurance policies issued by those insurance offices. And since an insurance policy is not a physical location — the argument by plaintiffs in this space goes — *Pallozzi* must be understood as holding that the ADA reached businesses beyond physical locations. But Judge Komitee noted that *Pallozzi* did *not* hold that the ADA applied to non-physical places. Instead, it held that given that the case involved a physical place of public accommodation indisputably covered by the ADA (an insurance office), the ADA covered discrimination in the provision of goods and services *of* that place of public accommodation. *Id.* at *6-7. In other words, under the analysis of *Pallozzi*, the existence of a physical place of public accommodation is a "condition precedent" to application of Title III to the goods and services sold by that place. *Newsday,* 2021 WL 3617522, at *7.

In addition, Judge Komitee considered and rejected two other related arguments sometimes relied on by courts in this area: that Congress could not have anticipated the Internet (and therefore its failure to include non-physical businesses in its coverage should not be interpreted as an intent to exclude them), and that the Internet's importance in the economy means that excluding websites from coverage would defeat the purpose of the statute. With respect to the first, Judge Komitee pointed out that non-physical businesses

9

(for example mail-order catalogs, and television), were certainly known to Congress, and yet Congress chose not to include them; he further pointed out that Congress amended the ADA much more recently — in 2008, when the Internet was already a mature medium — and did not take any steps to clarify that non-physical businesses were included in its scope. With respect to the second point, he recognized that "considerations of policy divorced from the statute's text and purpose could not override its meaning." *Id.* at *8 (*quoting United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731, 179 L.Ed.2d 723 (2011).)

*Winegard*'s holding that Title III cannot be interpreted to apply to stand-alone websites is not an outlier; other courts in this Circuit have held the same. *See Suris v. Gannett Co.*, 2021 WL 2953218, at *2 (E.D.N.Y. July 14, 2021) (dismissing an ADA lawsuit against a newspaper's purportedly inaccessible website because "even liberally construed" the court could not find that a stand alone website falls within any of the twelve statutory categories of places of public accommodation); *Martinez v. MyLife.com, Inc.*, 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021)(website that does not serve as an adjunct to a brick-and-mortar business and has no public-facing, physical retail operations is not a place of public accommodation).

Moreover, while there is admittedly a circuit split on the issue, at least *five* Circuit Courts have also expressly held that Title III of the ADA only applies to physical businesses. In *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998), the plaintiff sued the insurance company that provided insurance benefits to her through her employer. But because she received her benefits through her employer, she had no "nexus" to the insurance company's office, and because "the plain meaning of Title III is that a public accommodation is a place," the ADA did not protect her from "discrimination unrelated to places." *Id.* at 612-613.

Importantly, the Third Circuit found no ambiguity in the ADA's definition of public accommodation; *Id.* at 614.

The Fifth Circuit's decision in *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) is perhaps even more applicable to the instant case. In that case, the plaintiff sued Coca-Cola for operating an allegedly inaccessible vending machine. But the court upheld the dismissal of the Title III ADA case against Coca-Cola, holding the statute to be "unambiguous" as applying only to physical places of business. *Id.* at 534-5. And the mere fact that Coca-Cola sold products to the public — just as Glvss does — did not mean that it fit within any of the statutory definitions of a "place of public accommodation," such as a "sales establishment."[4] The Fifth Circuit also examined the legislative history and regulatory guidance and noted that every example given by House committee reports and the DOJ of the liberal construction of the ADA referred to physical places.

Like the Third Circuit, the Sixth Circuit rejected a similar claim against an insurance company that provided employee benefits, finding that "the clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. Every term listed in § 12181(7) and subsection (F) is a physical place open to public access." *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (characterizing an interpretation of the statute as permitting a place of accommodation to constitute something other than a physical place as "ignor[ing] the text of the statute").

---

[4] The Fifth Circuit noted that the business where such a vending machine was located might well be a place of public accommodation, and therefore the ADA might impose requirements on those businesses to have accessible vending machines. But the Coca-Cola company, which was the only defendant in the case, was not operating such a physical place merely by dint of selling products to the public.

The Ninth Circuit has held the same. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)(all items listed in the statute are actual, physical places, and applying *noscitur a sociis* to find that the statute only covered such places). Later, the Ninth Circuit clarified *Weyer*, holding that a website could be covered by the ADA, but **only** because the website facilitated access to the goods and services of an actual physical place of public accommodation. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (reiterating that Title III only applied to physical locations or websites with a nexus to physical locations.) And the Eleventh Circuit found Title III's statutory definition "unambiguous and clear" as only applying to "tangible, physical places. No intangible places or spaces, such as websites, are listed." *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). Indeed, the *Winn-Dixie* decision went even further than the other circuits, rejecting the "nexus" test between websites and physical locations as lacking any "basis for it in the statute or in our precedent." *Id.* at 1281.

Plaintiff will undoubtedly note that some courts in this district have expressly held that websites are places of public accommodation, and a small handful have found in favor of plaintiffs with respect to the precise issue here: whether a website with no nexus to any public-facing physical location fits within the statutory requirement. As an initial matter, we would note that all but one of those rulings predates Judge Komitee's *Newsday* decision.[5] The only case that considers and rejects *Newsday* is *Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). The *88 Acres Foods* case did — unlike many of the prior cases

---

[5] One other case that other plaintiff's counsel have cited in cases such as these, an oral decision in *Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022), was issued after *Newsday*, but that defendant's motion predated *Newsday*, and so the parties never raised, and the court never addressed, that case; it is not so much as mentioned even once in the *Athena Allergy* ruling.

to consider the issue — examine the text of the applicable statute, and (in contrast to *Newsday* as well as the Third, Fifth, Sixth, Ninth, and Eleventh Circuits) found it ambiguous. But it did so almost solely based on the fact that "travel service" could in theory be a non-physical place. But (as Judge Komitee noted in *Newsday*) there is no reason to read that term in such a fashion, particularly given that it is surrounded by words that are *indisputably* physical places. ("a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment") (Note that at one point the *88 Acres Foods* decision accidentally uses the phrase "travel service**s**," which sounds more like an intangible commercial offering. But the actual statutory phrase is "a... travel service," which would most reasonably be read as a single physical business — especially in 1990, when the statute was enacted.)

After finding that ambiguity, the *88 Acres Foods* case relied on a policy argument: that it would be "absurd" to distinguish between shopping at Whole Foods in-store and Whole Foods online. But even if that conclusion is valid, it is not even the relevant question, since Whole Foods' website *does* have a nexus to a brick-and-mortar location. The interpretation of the ADA being urged by defendant herein, as well as the *Newsday* court and five Circuit Courts of Appeal, is about distinguishing between Whole Foods in-store/online on the one hand and, for example, eBay.com on the other. (Or, in this case, shopzerouv.com) The *88 Acres Food* court also relied on isolated snippets of legislative history not part of the statute, expressing a view of the importance of eliminating discrimination. But as the Supreme Court has repeatedly cautioned, "no legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014)(reminding that it is

error to use the proposition that remedial statutes should be interpreted liberally as a substitute for a conclusion grounded in the statute's text and structure." *See also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725, 198 L. Ed. 2d 177 (2017)(calling it "mistaken" for a court to "assume" that "'whatever' might appear to 'further[ ] the statute's primary objective must be the law.'") Applying that principle, the Second Circuit has instructed that, even in the context of anti-discrimination law, "We may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of 'unlawful employment practices.'" *Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 682 (2nd Cir. 2016).

Congress knows how to write broad language when it chooses, and it seems odd to suggest that Congress would have carefully delineated twelve categories of business to which the ADA applies, when it could have used a catchall phrase such as "all businesses engaged in interstate commerce" if it actually wanted to ensure that the statute's coverage was universal. Defendant respectfully suggests that this Court should heed the Second Circuit's admonition in *Cooper*, find the text of the statute unambiguous, and should not resort to policy arguments to expand the scope of the ADA without express legislative authorization. As www.shopzerouv.com has no physical location, it is not within the statutory definition of a place of public accommodation, and plaintiff has failed to state a claim against it under the Americans with Disabilities Act.

### III.   Plaintiff's city claims must be dismissed for the same reasons his ADA claims must be.

In general, disability discrimination claims under the parallel state and city disability discrimination laws are evaluated under the same standards as the ADA. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2nd Cir. 2000); *Range v. 535 Broadway Grp. LLC*, 2019

WL 4182966, at *6 (S.D.N.Y. Sept. 3, 2019)(failure to state a claim under the ADA means that NYSHRL and NYSCRL claims also fail.) Alternatively, having dismissed plaintiff's only federal claim in this case, this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them pursuant to 28 U.S.C. § 1367(c). *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2nd Cir. 2006) (in the usual case in which all federal-law claims are eliminated before trial, courts should decline jurisdiction over the non-federal claims).

### IV.    Plaintiff is not entitled to a recovery of  "civil penalties and fines" or punitive damages under the NYSHRL or NYCHRL.

Even if plaintiff had standing and had adequately pleaded an injury in fact, and even if Title III of the Americans with Disabilities Act covered defendant's intangible business, plaintiff would not be entitled to much of the relief he seeks. Plaintiff states that he seeks to recover "civil penalties and fines" pursuant to the NYSHRL and NYCHRL. But he is not entitled to such. Civil penalties and fines under the NYSHRL are payable to the state, not a private plaintiff, See N.Y. Exec. L. § 297(4)(c)(vi) (providing for "civil fines and penalties ... to be paid to the *state* by a respondent found to have committed an unlawful discriminatory act")  Similarly, civil penalties and fines under the NYCHRL are payable to the *city*, not to a private plaintiff. NYC Admin Code. Title 8, Ch. 1, § 8-127(a).("Any civil penalties recovered pursuant to this chapter shall be paid into the general fund of the city.")

Plaintiff further seeks punitive damages, but the standard for obtaining that relief is high. The New York Court of Appeals explained that punitive damages require conduct that "goes beyond mere negligence"; they are available only for those who have "engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Chauca v.*

*Abraham*, 30 N.Y.3d 325, 334, 89 N.E.3d 475, 481 (2017)(*quoting Home Ins. Co. v. American Home Prods. Corp.*, 75 N.Y.2d 196, 203–204, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))(rejecting the notion that a mere showing of discrimination made punitive damages automatically available). Here, though, Mr. Yan Luis has not pleaded any specific facts to support any such heightened standard. Indeed, other than a conclusory use of the word "willful," he does not allege anything to suggest that Glvss's purported website violations had a "high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Id.* at 479. He does not, for instance, plead that defendant refused to remedy violations after those violations were brought to defendant's attention; he merely pleads that the violations occurred. (To be sure, plaintiff does *use* the word "refusal" in his complaint. But he pleads no *facts* to support that conclusory allegation.) But while those violations could be enough (if proved) to support liability for a violation of the applicable law, *Chauca* <u>expressly</u> rejected the notion that punitive damages are available "whenever liability, vicarious or direct, is demonstrated." *Id.* at 480. And if that is insufficient to support an award of punitive damages, than conclusorily alleging it is insufficient to satisfy the pleading burden, and the request for punitive damages must be dismissed.

<u>**CONCLUSION**</u>

For the reasons set forth above, this Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

Respectfully submitted,

By:

David Stein

Dated: June 23, 2022

16